**Jeremiah Ross, OSB #105980**
Email: ross@rosslawllc.com
Ross Law LLC
1207 SW 6th Ave.
Portland, OR 97204
Phone: (503) 224-1658
Fax: (888) 499-2575

Lead Counsel for Plaintiff Alterick Praylow

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ALTERICK PRAYLOW, <br><br>       Plaintiff, <br><br>   v. <br><br> UNITED STATES; THE UNITED STATES DEPARTMENT OF JUSTICE; JOSIAS SALAZAR in his individual capacity, CHASE SEXTON, in his individual capacity; JENNIFER BAUMEISTER in her individual capacity; CHARLES WILSON, in his individual capacity; JAMES GALBERTH, in his individual capacity. <br><br>       Defendants. | Case No. 3:21-cv-01817-JR <br><br> FIRST AMENDED COMPLAINT <br> (Federal Tort Claims Act, Civil Rights Violations, 8th Amendment, Rehabilitation Act of 1973) <br><br> DEMAND FOR JURY TRIAL <br> (Against individual Defendants) |

///

Page 1 - FIRST AMENDED COMPLAINT

# I.
## INTRODUCTION

This action is filed by Plaintiff under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and the Federal Tort Claims Act (28 U.S.C. § 2671, *supra*) for events occurring on or about October 11, 2020, constituting cruel and unusual punishment, due process violations, and unconstitutional customs, policies or procedures, in violation of the Fifth, Eighth, and Fourteenth Amendment to the United States Constitution, along with torts of negligence, and a violation of the Rehabilitation Act of 1973.

# II.
## JURISDICTION AND VENUE

1. This court has jurisdiction by virtue of 28 U.S.C. § 1346 (original jurisdiction) and 28 U.S.C. § 1331 (federal question).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 because at least one federal Defendant is in this District and a substantial part of the events giving rise to the claims in this action took place in this district.

# III.
## TORT CLAIM NOTICE

3. Plaintiff satisfied the notice requirements of the Federal Tort Claims Act, 28 U.S.C. §1346(b) and 28 C.F.R. § 14.9(b) and Prison Litigation Reform Act, 42 U.S.C. § 1997.

# IV.
## THE PARTIES

4. At all material times herein, Defendant UNITED STATES through the Bureau of Prisons ("BOP") operated the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). The BOP is one of Defendant United States Department of Justice's law enforcement agencies and is responsible for the administration of federal prisons and certain prisons, including FCI

Page 2 - FIRST AMENDED COMPLAINT

Sheridan.  BOP maintains physical custody of Plaintiff and is responsible for his safety and medical care while he is incarcerated.  The BOP is also responsible for the acts and omissions of its law enforcement officers and employees, including those whose conduct is at issue herein.

5.      At all times material Josias Salazar was the warden of FCI Sheridan and is responsible for exercising control and supervision of FCI Sheridan's functions and operations and the determination and establishment of policies and programs involved in the institutional operations and making staffing, personnel, and inmate safety and housing decisions.  He is being sued in his individual capacity.

6.      At all times material James Galberth was a Captain who was responsible for the safety and security of inmates in FCI Sheridan's Unit B and ensuring prison rules and regulations were adhered to.  He is being sued in his individual capacity.

7.      At all times material Jennifer Baumeister was a Unit Manager who was responsible for the safety and security of inmates in FCI Sheridan's Unit B and ensuring prison rules and regulations were adhered to.  She is being sued in her individual capacity.

8.      At all times material Charles Wilson was a Case Manager responsible for the safety and security of inmates in FCI Sheridan's Unit C, including Alterick Praylow, and ensuring prison rules and regulations were adhered to.

9.      At all times material Chase Sexton was a Correctional Officer responsible for the safety and security of inmates in FCI Sheridan's Unit C, including Alterick Praylow, and ensuring prison rules and regulations were adhered to.  Defendants Salazar, Galberth, Baumeister, Wilson, and Sexton, are collectively referred to as "BOP Employees."

10.     At all times material Plaintiff Alterick Praylow ("Mr. Praylow") was in the physical custody of FCI Sheridan.

## V.
### THE FACTS

11.     In 2020 FCI Sheridan was tasked with providing Mr. Praylow reasonable safety while he was incarcerated at FCI Sheridan.

12.     On or about August 13, 2020, Mr. Praylow suffered a seizure while being housed at FCI Sheridan.

13.     Later that day he was transported from FCI Sheridan to Willamette Valley Medical Center near FCI Sheridan due to medical issues relating to a seizure, a suspected stroke, or Todd's paralysis.

14.     On or about August 18, 2020, Mr. Praylow was discharged from the hospital and transported back to FCI Sheridan.

15.      As a result of the medical condition, Mr. Praylow suffered weakness in his left arm, left leg, and suffered recurring seizures which limited his mobility and constituted a serious medical need.

16.     As a result of this serious medical need, Mr. Praylow required mobility assistance in the form of a wheelchair to assist him with mobility, performing activities of daily living, and mitigating the risk injury in case of a fall during a seizure.

17.     Mr. Praylow was provided and used a wheelchair to assist with his serous medical need.

18.     Mr. Praylow was the only inmate in Unit 3B who required the use of a wheelchair.

19.     On August 18, 2020, Mr. Praylow was given a new Medical Duty Status (MDS) requiring him to be housed in a "cell on the first floor," and assigned to a lower bunk.

20.     After August 18, 2020, Mr. Praylow continued to suffer from seizures which would cause him to lose his balance.

////

Page 4 - FIRST AMENDED COMPLAINT

21.    BOP agents and employees were aware of his history of seizures that would cause Mr. Praylow to lose his balance.

22.    In Unit 3B of FCI Sheridan, there are cells on the lower level and same level as the indoor common area.  This area is known as the "flats."

23.    The inmate showers also were on the lower level.

24.    In August and September of 2020 in accordance with the MDS, Mr. Praylow was housed in a cell on the lower level and was not required to use stairs to get to or from the "flats."

25.    In mid to late September 2020 Charles Wilson ordered Mr. Praylow to be moved from the lower-level cell adjacent to the flats and assigned Mr. Praylow to be housed in cell 110 in Unit B.

26.    Defendant Salazar, Galberth, and Baumeister, were aware of the move and had the authority to grant or deny Mr. Praylow's move to cell 110 in Unit B.

27.    People are required to go up and down stairs in order to get to and from the flats and showers to cell 110.

28.    As a result of being moved to cell 110, Mr. Praylow was required to go up the stairs to get from the flats or showers to his assigned cell.

29.    Mr. Praylow still required a wheelchair.

30.    Mr. Praylow was forced to obtain the assistance from other inmates to help him to get up and down the stairs and to get his wheelchair up and down the stairs.

31.    Mr. Praylow became more vulnerable because of his reliance on other inmates to ascend and descend the stairs to get to his assigned cell.

32.    Mr. Praylow would be physically and emotionally exhausted after ascending or descending the stairs.

Page 5 - FIRST AMENDED COMPLAINT

33.     Mr. Praylow could not ascend or descend the stairs as often as other inmates due to the physical and emotional toll it took on him.

34.     It would take Mr. Praylow significantly more time than other inmates and BOP staff to ascend or descend the stairs.

35.     In order for Mr. Praylow to get from the flats and showers to cell 110 with the wheelchair he needed to utilize the stairs and also either drag the wheelchair up the stairs or ask another inmate to assist him with getting himself and the wheelchair up the stairs.

36.     On October 11, 2020, Chase Sexton was assigned to Unit 3B as a correctional officer to ensure the safety and wellbeing of the inmates, including Mr. Praylow, housed in Unit 3B.

37.     On October 11, 2020, Mr. Praylow was housed in cell 110 in Unit 3B.

38.     On October 11, 2020, Mr. Praylow was attempting to get from the flats to cell 110.

39.     The Bureau of Prisons staff, and Defendant Sexton, did not provide any assistance to Mr. Praylow as he attempted to ascend or descend the stairs.

40.     As Mr. Praylow reached the landing at the top of the stairs, he attempted to sit in his wheelchair.  He was unable to get into his wheelchair and fell down the stairs.

41.     The fall caused a T-8 to T9 disc herniation in his back which resulted in a spinal cord injury and associated deficit (T12 Asia C injury).  This has caused him severe lower limb weakness, severe limited mobility, and limited sensation in his lower extremities and rendered him a paraplegic.

42.     The back injury that resulted from the fall made Mr. Praylow more vulnerable, caused him fear, isolation, embarrassment, frustration, loss of sleep, pain, suffering, and emotional damage.

////

Page 6 - FIRST AMENDED COMPLAINT

# VI.
## FIRST CLAIM FOR RELIEF
### (*Negligence-Against the United States through the BOP*)

43.    As applicable, Plaintiff incorporates the above.

44.    As described above, BOP employees were acting in the course and scope of their employment.

45.    The Bureau of Prisons was negligent in one or more of the following particulars which either individually, or combined, led to Mr. Praylow's foreseeable injuries alleged in this Complaint:

    a.  In disregarding the MDS requiring him to be housed on a lower level,

    b.  In assigning Mr. Praylow a cell that required him to use stairs,

    c.  In failing to provide Mr. Praylow assistance to get up the stairs,

    d.  In relying on other inmates to assist Mr. Praylow up the stairs,

    e.  In not assisting Mr. Praylow with getting his wheelchair up the stairs,

    f.  In not ensuring there was a way for Mr. Praylow to get to cell 110 without exiting his wheelchair,

    g.  In assigning Mr. Praylow to a unit without an operating elevator,

    h.  In not ensuring there was a way for Mr. Praylow to get to cell 110 without utilizing stairs,

    i.  In failing to house Mr. Praylow in a cell that accommodated his mobility impairments,

    j.  In failing to appreciate the danger of requiring an inmate with mobility issues, such as Mr. Praylow, to use stairs to get to their assigned cell,

k.  In failing to appreciate the danger of requiring an inmate with mobility issues, such as Mr. Praylow, to attempt to enter a wheelchair at the top of the stairs,

l.  In failing to appreciate the risk of Mr. Praylow falling because of his limited mobility,

m.  In failing to account for Mr. Praylow's mobility impairment when assigning him to cell 110,

n.  In failing to adopt or enforce policies regarding housing inmates with mobility impairments on the lower level,

o.  In failing to adopt or enforce policies regarding housing inmates with a wheelchair,

p.  In failing to properly train officers to assist inmates with mobility impairments,

q.  In failing to properly train officers to assist inmates with wheelchairs,

r.  In failing to properly train officers to recognize the dangers that stairs pose to inmates with mobility impairments.

46.  As a direct, proximate, and foreseeable result of the negligence of the United States through the BOP alleged in this Complaint, Mr. Praylow suffered permanent and lasting physical and emotional injuries as described in this Complaint.  Mr. Praylow is seeking a reasonable amount of non-economic and economic damages.

47.  Mr. Praylow should be awarded his costs, and expert witness fees, against Defendant United States.

## VII.
### SECOND CLAIM FOR RELIEF
### *Bivens Claim*
### (*Eighth Amendment Violation-Medical Needs-*
### *Against Defendants Salazar, Sexton, Baumeister, Wilson, and Galberth*)

48.  As applicable, Plaintiff incorporates the above.

////

Page 8 - FIRST AMENDED COMPLAINT

49.    Under the Eighth Amendment of the U.S. Constitution Mr. Praylow cannot be subjected to cruel and unusual punishment.  This includes the right to having serious medical needs addressed. Showing deliberate indifference to a serious medical need which resulted in physical injury and emotional suffering and pain to Mr. Praylow constitutes cruel and unusual punishment in violation of the Eighth Amendment.

50.    As described above, in violation of the 8th Amendment of the United States Constitution, the non-medical officials Defendants Salazar, Sexton, Baumeister, Wilson, and Galberth, participated in and made decisions to disregard the MDS which was a medical official's decision that required Mr. Praylow to be housed on the lower level due to his medical conditions, being prone to seizures, and his limited mobility and necessity of a wheelchair.  Defendants Salazar, Galberth, Wilson, and Baumeister, moved him to a cell which required him to exit his wheelchair to ascend and descend stairs to get to and from the cell.  Defendant Sexton was aware of Mr. Praylow's medical necessity for a wheelchair and that he was required to use stairs to get to and from the cell. Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton were aware of the risk of a fall and serious injury posed to Mr. Praylow as he ascended and descended the stairs with his medical conditions, being prone to seizures, and his limited mobility.  Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton were deliberately indifferent in, intentionally neglecting Mr. Praylow's serious medical needs and failing to take reasonable measures to abate them.  As a result, Mr. Praylow experienced increased physical and mental suffering to travel to and from his cell and caused his fall that resulted in physical injury as described above.

51.    In addition to the deliberate indifference described in paragraph 45, Defendants Salazar, Galberth, Wilson, and Baumeister were deliberately indifferent for making medical decisions which failed to address Mr. Praylow' s serious post-fall medical needs.  After being released

from the hospital with a spinal cord injury with discharge instructions for physical therapy and therapeutic treatment, Defendant Salazar, Galberth, Wilson, and Baumeister, did not provide Mr. Praylow physical therapy or other therapeutic treatment to assist Mr. Praylow in regaining his strength and mobility in his lower extremities.

52.    Defendant Salazar, Galberth, Wilson, Baumeister, and Sexton, violated Mr. Praylow's right to be free from cruel and unusual punishment by doing one or more of the following:

a. Disregarding the MDS ordering Mr. Praylow to be housed on the lower level,

b. Withholding the use of a medical device from Mr. Praylow by moving him to a cell which required him to exit his wheelchair in order to get to and from his cell.

c. Intentionally neglecting Mr. Praylow's serious medical needs that required the use of a wheelchair for mobility,

d. Disregarding Mr. Praylow's physical and emotional suffering as he ascended and descended the stairs with his mobility impairments,

e. Forcing Mr. Praylow to use the stairs while knowing he had mobility issues and was at risk of falling,

f. Failing to provide any assistance to Mr. Praylow while he was ascending or descending the stairs,

g. Failing to provide an alternative route for Mr. Praylow to get to or from the assigned cell that did not require the use of stairs,

h. Forcing Mr. Praylow to rely on other inmates to assist him with his wheelchair while he was using the stairs,

i. Forcing Mr. Praylow to rely on other inmates to provide for his safety while using the stairs,

Page 10 - FIRST AMENDED COMPLAINT

j.   Disregarding the risk posed by a serious fall and injury from a wheelchair bound inmate being forced to use the stairs, and/or

k.   Failing to provide Mr. Praylow post-fall physical therapy or follow-up care to assist him in regaining the strength and mobility in his lower extremities.

53.    As a result of the violations of Mr. Praylow's Constitutional rights articulated in this Claim for Relief, Mr. Praylow suffered the physical injuries and emotional distress as described in this Complaint.

54.    As a result of the above, Mr. Praylow is entitled to an award of economic and non-economic damages and punitive damages against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, in amounts to be determined at trial.

## VIII.
### THIRD CLAIM FOR RELIEF
### *Bivens Claim*
### (*Eighth Amendment Violation-Reasonable Safety-Against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton*)

55.    As applicable, Plaintiff incorporates the above.

56.    Under the Eighth Amendment of the U.S. Constitution Mr. Praylow cannot be subjected to cruel and unusual punishment.  This includes the right to reasonable safety while incarcerated at FCI Sheridan.  Failure to provide reasonable safety is a violation of the Eighth Amendment.

57.    As described above, in violation of the Eighth Amendment of the United States Constitution Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton participated in and made decisions to not provide for Mr. Praylow' s reasonable safety by intentionally disregarding the MDS requiring him to be housed on a lower level.  In doing so, Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton affirmatively took steps to fail to provide for Mr. Praylow's reasonable safety.

Page 11 - FIRST AMENDED COMPLAINT

58.    Defendants Salazar, Galberth, Wilson, Baumeister and Sexton failed to provide reasonable safety to Mr. Praylow by utilizing untrained inmates to assist Mr. Praylow up and down the stairs and into and out of his wheelchair at the top of the stairs and failing to provide assistance to Mr. Praylow to ascend or descend the stairs. As a result, Mr. Praylow was physically harmed in the fall as described above.

59.    Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, violated Mr. Praylow's right to be free from cruel and unusual punishment by doing one or more of the following:

   a.   Disregarding the MDS ordering Mr. Praylow to be housed on the lower level,

   b.   Forcing Mr. Praylow to use the stairs while knowing he had mobility issues,

   c.   Failing to provide Mr. Praylow an alternative route to get to and from his cell that did not require the use of stairs,

   d.   Failing to provide Mr. Praylow any assistance to get up or down the stairs,

   e.   Failing to assist Mr. Praylow in getting his wheelchair up or down the stairs,

   f.   Forcing Mr. Praylow to rely on other inmates to assist him with his wheelchair while he was using the stairs and/or,

   g.   Forcing Mr. Praylow to rely on other inmates to provide for his safety while using the stairs.

60.    As a result of the violations of Mr. Praylow's Constitutional rights articulated in this Claim for Relief, Mr. Praylow suffered the physical injuries and emotional distress as described in this Complaint.

61.    As a result of the above, Mr. Praylow is entitled to an award of economic and non-economic damages and punitive damages against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, in amounts to be determined at trial.

**IV.**
**FOURTH CLAIM FOR RELIEF**
*Bivens Claim*
**(*Eighth Amendment Violation-Serious Risks to Health-*
*Against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton* )**

62.    As applicable, Plaintiff incorporates the above.

63.    Under the Eighth Amendment of the U.S. Constitution Mr. Praylow cannot be subjected to cruel and unusual punishment.  This includes the right to be free from being subjected to a serious risk to his health while incarcerated at FCI Sheridan.  Failure to protect Mr. Praylow from serious risk to his health is a violation of the Eighth Amendment.

64.    As described above, in violation of the Eighth Amendment of the United States Constitution Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, participated in and made decisions to intentionally disregard the MDS that resulted in a serious risk to Mr. Praylow's health by housing him in a cell which required him to use stairs while requiring a wheelchair for mobility.  In doing so, Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, took affirmative steps to create a substantial risk of serious harm which constitutes deliberate indifference.

65.    Defendants Salazar, Galberth, Wilson, Baumeister and Sexton, created a dangerous environment for Mr. Praylow by utilizing untrained inmates to assist Mr. Praylow up and down the stairs and into and out of his wheelchair at the top of the stairs and failing to offer any assistance to Mr. Praylow to ascend or descend the stairs.  As a result, Mr. Praylow was physically harmed in the fall as described above.

66.    Mr. Praylow did suffer serious harm from the fall as described above.

////

////

Page 13 - FIRST AMENDED COMPLAINT

67.    Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, violated Mr. Praylow's right to be free from cruel and unusual punishment by doing one or more of the following:

    a.    Disregarding the MDS ordering Mr. Praylow to be housed on the lower level,

    b.    Forcing Mr. Praylow to use the stairs while knowing he had mobility issues and was at risk of falling,

    c.    Forcing Mr. Praylow to rely on other inmates to assist him with his wheelchair while he was using the stairs, and/or,

    d.    Forcing Mr. Praylow to rely on other inmates to provide for his safety while using the stairs.

68.    As a result of the violations of Mr. Praylow's Constitutional rights articulated in this Claim for Relief, Mr. Praylow suffered the physical injuries and emotional distress as described in this Complaint.

69.    As a result of the above, Mr. Praylow is entitled to an award of economic and non-economic damages and punitive damages against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, in amounts to be determined at trial.

**X.**
**FIFTH CLAIM FOR RELIEF**
*Bivens Claim*
*(Eighth Amendment Violation-Unsafe Shelter-*
*Against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton)*

70.    As applicable, Plaintiff incorporates the above.

71.    Under the Eighth Amendment of the U.S. Constitution Mr. Praylow cannot be subjected to cruel and unusual punishment.  This includes the right to shelter which does not cause his degeneration or threaten his mental and physical wellbeing.  Failure to provide shelter which

////

Page 14 - FIRST AMENDED COMPLAINT

resulted in degeneration to and threatened his physical wellbeing constitutes cruel and unusual punishment in violation of the Eighth Amendment.

72. As described above, in violation of the 8th Amendment of the United States Constitution Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, participated in and/or made decisions to disregard the MDS that required Mr. Praylow to be housed on the lower level due to his limited mobility and use of a wheelchair and moved him to a cell which required him to ascend and descend stairs to get to and from the cell.  In doing so, Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, created a substantial risk of serious harm by failing to provide shelter.  This resulted in degeneration of his health. Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, intentionally caused Mr. Praylow to be at substantial risk of serious harm and did nothing to abate that harm.  This constitutes deliberate indifference.

73. Mr. Praylow suffered serious harm when he fell down the stairs and suffered the aforementioned spinal injury.

74. Mr. Praylow suffered degeneration of his physical condition by having to utilize the stairs despite his mobility impairments.

75. Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, violated Mr. Praylow's right to be free from cruel and unusual punishment by doing one or more of the following:

   h. Disregarding the MDS ordering Mr. Praylow to be housed on the lower level,

   i. Forcing Mr. Praylow to use the stairs while knowing he had mobility issues,

   j. Failing to provide Mr. Praylow an alternative route to get to and from his cell that did not require the use of stairs,

   k. Failing to provide Mr. Praylow any assistance to get up or down the stairs,

   l. Failing to assist Mr. Praylow in getting his wheelchair up or down the stairs,

Page 15 - FIRST AMENDED COMPLAINT

m.  Forcing Mr. Praylow to rely on other inmates to assist him with his wheelchair while he was using the stairs and/or,

n.  Forcing Mr. Praylow to rely on other inmates to provide for his safety while using the stairs.

76.    As a result of the violations of Mr. Praylow's Constitutional rights articulated in this Claim for Relief, Mr. Praylow suffered the physical injuries and emotional distress as described in this Complaint.

77.    As a result of the above, Mr. Praylow is entitled to an award of economic and non-economic damages and punitive damages against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, in amounts to be determined at trial.

**XI.**
**SIXTH CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation act of 1973**
(*Against the United States Department of Justice*)

78.    As applicable, Plaintiff incorporates the above.

79.    Pursuant to Section 504 of the Rehabilitation act of 1973, "No otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive Agency or by the United States Postal Service." 29 U.S.C. § 794.

80.    The United States Department of Justice's BOP is an Executive Agency that conducts programs and activities and receives Federal financial assistance.

81.    Prior to October 11, 2020, Mr. Praylow was disabled within the meaning of 29 U.S.C. § 794 in that he had limited mobility and strength in his left leg.

Page 16 - FIRST AMENDED COMPLAINT

82.    FCI Sheridan was aware of Mr. Praylow's limited mobility and strength in his left leg.

83.    FCI Sheridan must make reasonable modifications in policies, practices, and procedures to avoid discrimination on the basis of disability.

84.    In assigning Mr. Praylow to a cell not on the lower level, the United States Department of Justice refused to accommodate Mr. Praylow's disability and/or discriminated against him based on his disability.  This severely limited Mr. Praylow's access to the common areas, recreational yard, and showers.  This kept Mr. Praylow from accessing the common area, recreational yard, and showers on the same basis as other inmates.

85.    In assigning Mr. Praylow to a cell not on a lower level the United States Department of Justice caused physical injury to Mr. Praylow as a result of him having to walk on stairs to get to and from his cell.

86.    After the October 11, 2020 injury which severely limited his mobility and strength in his lower extremities, Mr. Praylow has been housed in cells that were too small to accommodate his wheelchair.

87.    After the October 11, 2020 injury which severely limited his mobility and strength in his lower extremities Mr. Praylow has not been provided regular physical therapy or occupational therapy to assist him with regaining the strength and mobility in his lower extremities.

88.    Very shortly after the filing of this lawsuit, the Bureau of Prisons unexplainably transferred Mr. Praylow to FCI Beckley in West Virginia.

89.    The Bureau of Prisons was aware of Mr. Praylow' s spinal cord injury and limited mobility and strength.

90.     FCI Beckley failed to provide timely and sufficient physical therapy and or occupational therapy to assist him with his spinal injury and regaining strength and mobility.

Page 17 - FIRST AMENDED COMPLAINT

91.     No plain, adequate, or complete remedy at law is available to Mr. Praylow to redress the wrongs addressed in this Claim for Relief.

92.     If this Court does not grant the injunctive relief sought in this Claim for Relief, Mr. Praylow will be irreparably harmed.

93.     Mr. Praylow seeks preliminary and permanent injunctions mandating that Mr. Praylow be provided medical care to assist him in regaining the strength and mobility in his lower extremities.

**WHEREFORE, Plaintiff prays for relief from the Court as follows:**

94.     Award Plaintiff his economic and non-economic damages against Defendants in amounts to be determined at trial in accordance with the allegations and claims set forth above,

95.     Award Plaintiff punitive damages against Defendants Salazar, Galberth, Wilson, Baumeister, and Sexton, in amounts to be determined at trial in accordance with the allegations and claims set forth above,

96.     Award Plaintiff litigation expenses/costs against Defendants in accordance with the allegations and claims set forth above,

97.     Award Plaintiff injunctive relief as described above,

98.     Grant such other relief as may be just and proper.

DEMAND FOR A JURY TRIAL AGAINST INDIVIDUAL DEFENDANTS

DATED: May 5, 2022

RESPECTFULLY FILED,

s/ Jeremiah Ross
JEREMIAH ROSS, Oregon Bar No. 105980
Attorney for Plaintiff Alterick Praylow

Page 18 - FIRST AMENDED COMPLAINT