**Jeremiah Ross, OSB #105980**
Email: ross@rosslawllc.com
Ross Law LLC
1207 SW 6th Ave.
Portland, OR 97204
Phone: (503) 224-1658
Fax: (888) 499-2575


Lead Counsel for Plaintiff Alterick Praylow

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ALTERICK PRAYLOW, | |
| Plaintiff, | Case No. 3:21-cv-01817-JR |
| v. | SECOND AMENDED COMPLAINT (Federal Tort Claims Act) |
| UNITED STATES. | |
| Defendant. | |

**I.**
**JURISDICTION AND VENUE**

1.      This court has jurisdiction by virtue of 28 U.S.C. § 1346 (original jurisdiction) and 28 U.S.C. § 1331 (federal question).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 because at least one federal Defendant is in this District and a substantial part of the events giving rise to the claims in this action took place in this district.

Page 1 - SECOND AMENDED COMPLAINT

## II.
### TORT CLAIM NOTICE

3.      Plaintiff satisfied the notice requirements of the Federal Tort Claims Act, 28 U.S.C.

§1346(b) and 28 C.F.R. § 14.9(b) and although not necessary to pursue this claim, the Prison

Litigation Reform Act, 42 U.S.C. § 1997.

## III.
### THE PARTIES

4.      At all material times herein, Defendant UNITED STATES through the Bureau of Prisons

("BOP") operated the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan").

The BOP is one of Defendant United States Department of Justice's law enforcement agencies

and is responsible for the administration of federal prisons and certain prisons, including FCI

Sheridan.  BOP maintains physical custody of Plaintiff and is responsible for his safety and

medical care while he is incarcerated.  The BOP is also responsible for the acts and omissions of

its law enforcement officers and employees, including those whose conduct is at issue herein.

5.      At all times material Jennifer Baumeister was a Unit Manager who was responsible for

the safety and security of inmates in FCI Sheridan's Unit 3B and ensuring prison rules and

regulations were adhered to.

6.      At all times material Charles Wilson was a Case Manager responsible for the safety and

security of inmates in FCI Sheridan's Unit 3B, including Alterick Praylow, and ensuring prison

rules and regulations were adhered to.

7.      At all times material Chase Sexton was a Correctional Officer responsible for the safety

and security of inmates in FCI Sheridan's Unit 3B, including Alterick Praylow, and ensuring

prison rules and regulations were adhered to.

8.      At all times material Plaintiff Alterick Praylow ("Mr. Praylow") was in the physical

Page 2 - SECOND AMENDED COMPLAINT

custody of the BOP.

## IV.
### THE FACTS

9.      In 2020 FCI Sheridan was tasked with providing Mr. Praylow reasonable safety while he was incarcerated at FCI Sheridan.

10.      In 2020 FCI Sheridan was tasked with providing inmates, including Mr. Praylow, with medical care. This included scheduling and arranging inmates to attend appointments off of the Federal Prison grounds.

11.      On or about August 13, 2020, Mr. Praylow suffered a seizure while being housed at FCI Sheridan.

12.      Later that day he was transported from FCI Sheridan to Willamette Valley Medical Center near FCI Sheridan due to medical issues relating to a seizure, a suspected stroke, or Todd's paralysis.

13.      On or about August 18, 2020, Mr. Praylow was discharged from the hospital and transported back to FCI Sheridan.

14.       As a result of the medical condition, Mr. Praylow suffered weakness in his left arm, left leg, and suffered recurring seizures which limited his mobility and constituted a serious medical need.

15.      As a result of this serious medical need, Mr. Praylow required mobility assistance in the form of a wheelchair to assist him with mobility, performing activities of daily living, and mitigating the risk injury in case of a fall during a seizure.

16.      Mr. Praylow was provided and used a wheelchair to assist with his serous medical need.

17.      At the time, Mr. Praylow was the only inmate in Unit 3B who required the use of a wheelchair.

18.     On August 18, 2020, Mr. Praylow was given a new Medical Duty Status (MDS) requiring him to be housed in a "cell on the first floor," and assigned to a lower bunk and authorized the use of a walker.

19.     After August 18, 2020, Mr. Praylow continued to suffer from seizures which would cause him to lose his balance.

20.     On or about August 24, 2020 Mr. Praylow was sent to Willamette Valley Medical Center again for another seizure concern. He was discharged on or about August 27, 2020.  His discharge orders noted he would be discharged with a wheelchair and a neurology follow up. Mr. Praylow required the use of a wheelchair.

21.     Mr. Praylow was not provided a new MDS authorizing the wheelchair.

22.      BOP agents and employees were aware of his history of seizures that would cause Mr. Praylow to lose his balance.

23.     In Unit 3B of FCI Sheridan, there are cells on the lower level and same level as the indoor common area.  This area is known as the "flats."

24.     The inmate showers that can accommodate a wheelchair also were on the lower level.

25.     In August and September of 2020 in accordance with the MDS, Mr. Praylow was housed in a cell on the lower level and was not required to use stairs to get to or from the "flats."

26.     On or about October 8, ,2020 Charles Wilson ordered Mr. Praylow to be moved from the lower-level cell adjacent to the flats and assigned Mr. Praylow to be housed in cell 110 in Unit 3B.

27.     People are required to go up and down stairs in order to get to and from the flats, the building exits, and showers that accommodate a wheelchair to cell 110 in 3B.

28.     As a result of being moved to cell 110, Mr. Praylow was required to go up the stairs to

Page 4 - SECOND AMENDED COMPLAINT

get to or from the eating facility, medical services building, the recreation yard, the flats, and showers that could accommodate his wheelchair.

29.    Mr. Praylow was forced to obtain assistance from other inmates to help him to get up and down the stairs and to get his wheelchair up and down the stairs.

30.    Mr. Praylow became more vulnerable because of his reliance on other inmates to ascend and descend the stairs to get to his assigned cell.

31.    Mr. Praylow would be physically and emotionally exhausted after ascending or descending the stairs.

32.    Mr. Praylow could not ascend or descend the stairs as often as other inmates due to the physical and emotional toll it took on him.

33.    It would take Mr. Praylow significantly more time than other inmates and BOP staff to ascend or descend the stairs.

34.    In order for Mr. Praylow to get from the flats and showers that accommodated a wheelchair to cell 110 with the wheelchair he needed to utilize the stairs and also either drag the wheelchair up the stairs or ask another inmate to assist him with getting himself and the wheelchair up the stairs.

35.    On October 11, 2020, Chase Sexton was assigned to Unit 3B as a correctional officer to ensure the safety and wellbeing of the inmates, including Mr. Praylow, housed in Unit 3B.

36.    On October 11, 2020, Mr. Praylow was attempting to get from the flats to cell 110.

37.    The Bureau of Prisons staff, and Defendant Sexton, did not provide any assistance to Mr. Praylow as he attempted to ascend or descend the stairs.

38.    As Mr. Praylow reached the landing at the top of the stairs, he attempted to sit in his wheelchair.  He was unable to get into his wheelchair and fell down the stairs.

Page 5 - SECOND AMENDED COMPLAINT

39.    Chase Sexton responded a short time later. Mr. Praylow informed Correctional Staff that his back felt like it was burning and he was unable to move his lower extremities.  Chase Sexton suspected a spinal cord injury. Moments later two Correctional Officers turned Mr. Praylow over without the utilization of a backboard or cervical collar.

40.    The fall caused a T-8 to T9 disc herniation in his back which resulted in a spinal cord injury and associated deficit (T12 Asia C injury), hernia, and a Deep Vein Thrombosis.  This has caused him severe lower limb weakness, severe limited mobility, and limited sensation in his lower extremities and rendered him a paraplegic.

41.    The back injury that resulted from the fall made Mr. Praylow more vulnerable and he was eventually stabbed, caused him fear, isolation, embarrassment, frustration, loss of sleep, pain, suffering, and emotional damage.

## V
### FIRST CLAIM FOR RELIEF
#### (*Negligence-Against the United States through the BOP*)

42.    As applicable, Plaintiff incorporates the above.

43.    As described above, BOP employees were acting in the course and scope of their employment.

44.    The BOP was negligent in one or more of the following particulars which either individually, or combined, led to Mr. Praylow's foreseeable injuries alleged in this Complaint:

  a.  In disregarding the MDS requiring him to be housed on a lower level,

  b.  In disregarding the MDS that noted he was authorized a walker,

  c.  In failing to issue a MDS adopting the discharge instructions requiring a wheelchair,

  d.  In failing to provide accommodations such as a ramp or elevator to assist Mr. Praylow with traversing the stairs,

Page 6 - SECOND AMENDED COMPLAINT

e.  In requiring Mr. Praylow to use the stairs despite knowing he required the use of a wheelchair,

f.  In failing to provide Mr. Praylow's wheelchair assistance to get up the stairs,

g.  In relying on other inmates to assist Mr. Praylow up the stairs,

h.  In failing to train inmates to assist Mr. Praylow with the utilization of a wheelchair,

i.  In not assisting Mr. Praylow with getting his wheelchair up the stairs,

j.  In failing to provide a way for Mr. Praylow to get to cell 110 without exiting his wheelchair,

k.  In failing to provide a way for Mr. Praylow to get to cell 110 without utilizing stairs,

l.  In failing to appreciate the danger of requiring an inmate with mobility issues, such as Mr. Praylow, to use stairs to get to their assigned cell that was not on the ground floor,

m.  In flipping Mr. Praylow over after the fall without the utilization of a backboard,

n.  In flipping Mr. Praylow over after the fall,

o.  In failing to appreciate the risk of Mr. Praylow falling because of his limited mobility,

p.  In failing to account for Mr. Praylow's mobility impairment when assigning him to cell that required the utilization of the stairs,

q.  In failing to properly train Charles Wilson to manage inmates with disabilities,

r.  In failing to adopt or enforce policies regarding housing inmates with mobility impairments on the lower level,

s.  In failing to adopt or enforce policies regarding housing inmates with a wheelchair,

t.  In failing to properly train officers to assist inmates with mobility impairments,

u.  In failing to properly train officers to respond to emergencies where an inmate has a

Page 7 - SECOND AMENDED COMPLAINT

suspected spinal cord injury.

v.   In failing to properly train officers to recognize the dangers that stairs pose to inmates with mobility impairments.

w.  In failing to provide Mr. Praylow with prescribed physical therapy after the Octorber 11, 2020 fall,

x.   In failing to authorize permission to attend follow up appointments with a Neurologist regarding his spinal cord injury.

y.   In failing to comply with BOP program statement 5200.06 (2019).

45.    As a direct, proximate, and foreseeable result of the negligence of the United States through the BOP alleged in this Complaint, Mr. Praylow suffered permanent and lasting physical and emotional injuries as described in this Complaint.  Mr. Praylow is seeking a reasonable amount of non-economic and economic damages.

46.    Mr. Praylow should be awarded his costs, and expert witness fees, against Defendant United States.

**WHEREFORE, Plaintiff prays for relief from the Court as follows:**

47.    Award Plaintiff his economic and non-economic damages against Defendant in amounts to be determined at trial in accordance with the allegations and claims set forth above,

48.    Award Plaintiff litigation expenses/costs against Defendant in accordance with the allegations and claims set forth above,

49.    Grant such other relief as may be just and proper.

RESPECTFULLY FILED,

s/ Jeremiah Ross

DATED: February 26, 2024

JEREMIAH ROSS, Oregon Bar No. 105980
Attorney for Plaintiff Alterick Praylow

Page 8 - SECOND AMENDED COMPLAINT